1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10   HALO COUTURE, LLC,                    CASE NO. 13cv1780-MMA (BGS)

11                            Plaintiff,    **ORDER GRANTING MIRACLE 7,**
                                            **INC.'S MOTION TO DISMISS**
12          vs.
                                            [Doc. No. 5]
13   MIRACLE 7, INC.,

14                            Defendant.

15          On July 30, 2013, Miracle 7, Inc. ("M7") filed suit against Halo Couture, LLC

16   ("Halo") in the Southern District of Florida alleging trademark infringement.  *See*

17   Civil Case No. 0:13-cv-61643-RSR ("the Florida action").  On August 1, 2013, Halo

18   filed this mirror image suit seeking a declaration of non-infringement of the subject

19   mark.  *See* Doc. No. 1.  M7 now moves to dismiss this action pursuant to the "first to

20   file" rule.  *See* Doc. No. 5.  Halo opposes the motion on grounds that M7 filed the

21   Florida action in bad faith.  *See* Doc. No. 6.  For the reasons set forth below, the

22   Court **GRANTS** M7's motion to dismiss.

23                              <u>BACKGROUND</u>

24          M7 and Halo both operate in the beauty industry.  Halo provides high-end hair

25   extensions, while M7 produces a line of hair care products.  This action arises out of

26   Halo's purported infringement of M7's common law mark **Miracle 7 for Heavenly**

27   **Hair (plus wing and halo design)** ("M7's mark").  On July 1, 2013, M7 served a

28   cease and desist letter upon Halo, demanding that Halo immediately stop using its

1  mark **Halo Couture for Heavenly Hair in an Instant** ("Halo's mark").  M7

2  requested confirmation of Halo's compliance with its demands within seven days of

3  receipt of the letter:

> **Miracle 7 would prefer to settle this amicably without intervention of the court, but our client is prepared to take all action deemed necessary to protect its valuable trademark rights if we do not receive confirmation that Halo Couture has complied with the foregoing demands within seven (7) days.**

7  *See Biggerstaff Decl'n ISO Motion*, Ex. B (bold in original).

8  On July 17, 2013, Halo filed an application to trademark its own mark with

9  the United States Patent and Trademark Office ("USPTO").  *Id.*, Ex. C.  On Friday,

10  July 26, 2013, M7 sent Halo a second cease and desist letter containing the

11  following admonishment:

> If we do not received [sic] a response by end of business **Monday, July <u>29, 2013</u>**, we will assume that the parties cannot resolve this matter on their own and shall take all action necessary to protect our client's trademark rights.  All offers to negotiate a resolution will be removed as of July 29.

15  *Id.*, Ex. D (bold underline in original).  On that same date, counsel for both parties

16  participated in a telephone conference.  Counsel discussed possible settlement of the

17  dispute but did not agree upon terms.  According to counsel for M7, "no resolution

18  was achieved" and counsel for Halo indicated that his client would not cease and

19  desist its use of Halo's mark.  *Id.* ¶ 8.  According to counsel for Halo, a "tentative

20  settlement" was reached based upon Halo's offer to remove the word "heavenly"

21  from its website, advertising, and packaging; however, Halo would not stop using its

22  logo.[1]  *Becker Decl'n ISO Opp'n*, ¶ 7.  Counsel for Halo communicated his client's

23  position that M7 has no valid trademark rights in the wing and halo design elements

24  of M7's mark.  *Biggerstaff Decl'n* ¶ 7.

25  On July 30, 2013, M7 filed the Florida action, alleging causes of action for

26  statutory and common law trademark infringement, false designation of origin and

27

28
_____

[1] Halo's mark includes a logo consisting of wings and a halo design.  *Complaint* ¶ 8.

false advertising, and unfair trade practices under Florida law.  *Id.* ¶ 8; Ex. A.
Counsel for the parties participated in a telephone conference on July 31, 2013.  *Id.* ¶
9; *Becker Decl'n* ¶ 9; *Kelly Decl'n* ¶ 3.  The parties dispute both the tenor and
substance of the conversation, but are consistent in their reporting of the result –
there was no settlement.

On August 1, 2013, Halo filed this action.  M7 seeks dismissal pursuant to the
"first to file" rule, which by its nature favors the Florida action.  Halo argues this
action should be excepted from the rule based on M7's bad faith settlement
negotiations.

## DISCUSSION

### 1.    Legal Standard

"There is a generally recognized doctrine of federal comity which permits a
district court to decline jurisdiction over an action when a complaint involving the
same parties and issues has already been filed in another district."  *Pacesetter
Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-5 (9th Cir. 1982).  This "first to
file" rule normally promotes efficiency and "should not be disregarded lightly."
*Church of Scientology of Cal. v. U.S. Dep't. of the Army*, 611 F.2d 738, 750 (9th Cir.
1979).  "The doctrine is designed to avoid placing an unnecessary burden on the
federal judiciary, and to avoid the embarrassment of conflicting judgments."  *Id.*

In applying the "first to file" rule, a court looks to three threshold factors: "(1)
the chronology of the two actions; (2) the similarity of the parties, and (3) the
similarity of the issues."  *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663,
665 (N.D. Cal. 2003).  Exceptions to the rule include bad faith, anticipatory suit, and
forum shopping.  *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th
Cir. 1991) (internal citations omitted).

### 2.    Analysis

The threshold factors are not in dispute.  M7 filed the Florida action first; the
parties in both actions are identical; the claims involved in each action are mirror

1    images of one another.  The "first to file" rule applies.  At issue is whether the bad

2    faith exception provides an equitable reason to disregard the rule in this case.

3         Halo argues that M7 filed the Florida action in bad faith. Halo suggests that it

4    was involved in "tentative" settlement negotiations with M7, such that Halo's

5    counsel was "blind-sided and shocked" when settlement could not be reached and

6    M7 instead chose to litigate. *Becker Decl'n* ¶ 9.  However, this assertion stretches

7    the limits of credibility for two reasons.  First, M7 placed Halo on notice of possible

8    litigation in its first cease and desist letter, unequivocally advising Halo of M7's

9    intent to seek court intervention if Halo did not meet M7's demands.  Several weeks

10   later, and prior to engaging in settlement discussions, Halo filed its application with

11   the USPTO to protect its own trademark rights.  If there was any doubt remaining as

12   to the possibility of imminent litigation, M7's second cease and desist letter plainly

13   stated that Halo's failure to meet its demands within one business day would result

14   in taking "all action necessary" to protect its trademark rights. *See Biggerstaff*

15   *Decl'n*, Ex. D.

16        Second, Halo's counsel concedes that any settlement negotiations were

17   "tentative." *Becker Decl'n* ¶ 7.  According to Halo's counsel, the tentative

18   settlement consisted of Halo's promise to stop using the term "heavenly."  *Id*.  But

19   Halo refused to stop using its logo with the purportedly infringing wings and halo

20   design elements.  *Id*.  Settlement negotiations understandably stalled based on

21   Halo's position; M7's cease and desist letters expressly demanded that Halo stop

22   using its mark with the wings and halo design.  When the July 29, 2013 deadline set

23   forth in the second cease and desist letter passed without an agreement on the issue,

24   Halo's counsel could not have been "shocked" that M7 filed suit.

25        Aside from the rancor and rhetoric of Halo's counsel, there is nothing in the

26   record before the Court to suggest that M7 "acted in bad faith simply by declining to

27   continue with the negotiations." *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d

28   980, 991 (N.D. Cal. 2011).  M7 is the "natural plaintiff" in this litigation. *Xoxide,*

*Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188 (C.D. Cal. 2006).  By filing this mirror image declaratory judgment action, Halo attempts to deprive M7 of its choice of Florida as a forum for pursuing its claims.  *Id.*, citing *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 749 (7th Cir. 1987) and *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185 (1952) (noting that an alleged infringer cannot use the Declaratory Judgment Act to give it "a paramount right to choose the forum for trying out questions of infringement and validity.").  Furthermore, courts routinely hold that a substantive infringement action should proceed even when it is filed second.  *See Xoxide*, 448 F.Supp.2d at 1193 ("Where the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even when filed later.") (internal quotations omitted).  Here, M7 filed its infringement suit first.

In sum, the Court finds that the "first to file" rule applies to this case and Halo's contention that M7 filed the Florida action in bad faith is without merit.[2]  The parties engaged in limited, tentative settlement discussions which proved unsuccessful.  M7 then filed suit to protect its purported trademark rights.  Halo's "declaratory judgment action multiplies litigation" and "attempts to remove ongoing litigation from the forum chosen" by M7.  *Pacesetter Systems, Inc.*, 678 F.2d at 97. Dismissal of this action in favor of the Florida action is appropriate.

<u>CONCLUSION</u>

For the reasons set forth above, the Court **GRANTS** Miracle 7, Inc.'s motion and **DISMISSES** this action without prejudice.  The Clerk of Court is instructed to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATED:  October 17, 2013

Hon. Michael M. Anello
United States District Judge

---

[2] This finding is dispositive of the matter.  As such, the Court declines to address M7's contention that Halo filed this action in bad faith.

13cv1780